# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 13-483V
### (Not to be published)

```
* * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
TANISIA CUNNINGHAM,                 *       Filed: September 1, 2017
legal guardian of G.C.F.,           *
                                    *
                 Petitioner,        *
                                    *
                                    *       Decision on Attorneys' Fees and
          v.                        *       Costs; Attorney Hourly Rates
                                    *
SECRETARY OF HEALTH AND             *
HUMAN SERVICES                      *
                                    *
                 Respondent.        *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * *
```

*Clifford Shoemaker, Vienna VA, for Petitioner.*
*Voris Johnson, U.S. Department of Justice, Washington DC, for Respondent.*

### DECISION AWARDING ATTORNEYS' FEES AND COSTS

**HASTINGS, *Special Master*.**

In this case under the National Vaccine Injury Compensation Program (hereinafter "the Program"[1]), Petitioner seeks, pursuant to 42 U.S.C. § 300aa-15(e)(1), an award for attorneys' fees and other costs incurred in attempting to obtain Program compensation. Petitioner seeks an award of $109,240 for her counsel and an additional $695 for her personal litigation expenses. After careful consideration, I have determined to grant the request, with minimal reductions.

---

[1] The applicable statutory provisions defining the Program are found at 42 U.S.C. § 300aa-10 *et seq.* (2012 ed.). Hereinafter, for ease of citation, all "§" references will be to 42 U.S.C. (2012 ed.). The statutory provisions defining the Program are also sometimes referred to as the "Vaccine Act."

# I
# BACKGROUND LAW CONCERNING ATTORNEYS' FEES AND COSTS AWARDS

Special masters have the authority to award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. §300aa–15(e)(1).  This is true even when a petitioner is unsuccessful on the merits of the case -- in such cases, a special master "may" award fees, if the petition was filed in good faith and with a reasonable basis.  *Id*. "The determination of the amount of reasonable attorneys' fees is within the special master's discretion." *Saxton v. HHS,* 3 F.3d 1517, 1520 (Fed. Cir. 1993); *see also Shaw v. HHS,* 609 F.3d 1372, 1377 (Fed. Cir. 2010).

Further, as to all aspects of a claim for attorneys' fees and costs, the burden is on the *petitioner* to demonstrate that the attorneys' fees claimed are "reasonable." *Sabella v. HHS,* 86 Fed. Cl. 201, 215 (2009); *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983); *Rupert v. HHS,* 52 Fed. Cl. 684, 686 (2002); *Wilcox v. HHS,* No. 90–991V, 1997 WL 101572, at *4 (Fed. Cl. Spec. Mstr. Feb. 14, 1997).  The petitioner's burden of proof to demonstrate "reasonableness" applies equally to *costs* as well as attorneys' fees.  *Perreira v. HHS,* 27 Fed. Cl. 29, 34 (1992), *aff'd,* 33 F.3d 1375 (Fed. Cir. 1994).

One test of the "reasonableness" of a fee or cost item is whether a hypothetical petitioner, who had to use his own resources to pay his attorney for Vaccine Act representation, would be willing to pay for such expenditure.  *Riggins v. HHS,* No. 99–382V, 2009 WL 3319818, at *3 (Fed. Cl. Spec. Mstr. June 15, 2009), *aff'd by unpublished order* (Fed. Cl. Dec. 10, 2009), *aff'd,* 406 Fed. App'x. 479 (Fed. Cir. 2011); *Sabella v. HHS,* No. 02–1627V, 2008 WL 4426040, at *28 (Fed. Cl. Spec. Mstr. Aug. 29, 2008), *aff'd in part and rev'd in part,* 86 Fed. Cl. 201 (2009). In this regard, the United States Court of Appeals for the Federal Circuit has noted that:

> [i]n the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority.

*Saxton*, 3 F.3d at 1521 (emphasis in original) (quoting *Hensley*, 461 U.S. at 433–34).  Therefore, in assessing the number of hours reasonably expended by an attorney, the court must exclude those "hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." *Hensley*, 461 U.S. at 434; *see also Riggins*, 2009 WL 3319818, at *4.

The Federal Circuit has also made clear that special masters may rely on their prior experience in making reasonable fee determinations, without conducting a line-by-line analysis of the fee bill, and are not required to rely on specific objections raised by respondent.  *See Saxton*, 3 F.3d at 1521; *Sabella*, 86 Fed. Cl. 201, 209 (2009); *see also Wasson v. HHS,* 24 Cl. Ct. 482, 484, 486 (1991), *aff'd,* 988 F.2d 131 (Fed. Cir. 1993) (holding that, in determining a reasonable number of hours expended in any given case, a special master may rely on her experience with the Vaccine Act and its attorneys, without basing his decision on a line-by-line examination of the fee application).  A unanimous Supreme Court has articulated a similar holding:

We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." We can hardly think of a sphere of judicial decision making in which appellate micromanagement has less to recommend it.

*Fox v. Vice*, 563 U.S. 826, 838 (2011) (internal citations omitted).

## II
## PROCEDURAL HISTORY

The Petitioner, Tanisia Cunningham, filed this petition on July 17, 2013. (Petition, ECF No. 1.) The case was originally assigned to Special Master Laura Millman (ECF No. 2.), then reassigned to my docket on September 25, 2013. (ECF No. 9.)

Petitioner filed medical records identified as Exhibits 1 through 13 on September 24, 2013. (ECF Nos. 7-8.) Petitioner filed a Statement of Completion on October 7, 2013, indicating that all of the medical records relevant to this claim had been filed. (ECF No. 12.)

Respondent filed Respondent's "Rule 4(c) report" on December 6, 2013, contending that it would be inappropriate to grant a compensation award in this case. (ECF No.13.)

On July 15, 2014, Petitioner filed the expert report of pediatric neurologist Dr. Yuval Shafrir. (Ex. 14, ECF No. 21-2.) Shortly thereafter, Petitioner filed Exhibits 16 through 42, constituting medical literature submitted to support Dr. Shafrir's expert opinion. (ECF Nos. 22, 24-26.)

On December 10, 2014, Respondent filed the responsive expert report of pediatric neurologist Dr. Max Wiznitzer (Ex. A, ECF No. 31-1) and an Amended "Rule 4(c) report" (ECF No. 32).

In preparation for an evidentiary hearing, Petitioner filed the supplementary report of Dr. Shafrir on August 18, 2015 (Ex. 47, ECF No. 39), followed shortly thereafter by another supplementary report discussing additional medical literature that Dr. Shafrir considered relevant to his theory of causation (Ex. 48, ECF No. 40). Petitioner also submitted more medical literature that was cited by Dr. Shafrir (*see* Exs. 43-46, 49-68; ECF Nos. 35, 43-45), and updated medical records (Exs. 69-71, ECF Nos. 46, 50-51). On September 4, 2015, Petitioner filed a Pre-Hearing Memorandum. (ECF No. 49.)

Respondent filed the supplementary expert report of Dr. Wiznitzer (Ex. C, ECF No. 47) and Respondent's Pre-Hearing Memorandum (ECF No. 48) on September 4, 2015, along with medical literature in support of his opinion (Exs. D-F, ECF No. 47.)

3

On September 18, 2015, I convened an evidentiary hearing in Washington DC, to hear the testimony of Tanisia Cunningham, Petitioner's expert Dr. Shafrir, and Respondent's expert Dr. Wiznitzer.  The transcript of that proceeding became available on October 15, 2015. (ECF No. 54.)

Petitioner filed a Post-Hearing Memorandum on December 17, 2015 (ECF No. 57), and Respondent filed a responsive Post-Hearing Brief on February 4, 2016 (ECF No. 58).  On March 7, 2016, Petitioner filed a Post-Hearing Reply. (ECF No. 59.)

On July 23, 2016, Petitioner filed an application seeking "interim" attorneys' fees and costs incurred in her attempt to gain a Program award in this case.  (ECF No. 60.)  Respondent filed a short Response on August 4, 2016, arguing generally that I should award a reduced amount, but offering no substantial analysis of the application. (ECF No. 62.)

On August 1, 2016, I filed a Decision concluding that Petitioner is not entitled to a Program award. (ECF No. 61.)

Petitioner filed a Motion for Review of that Decision, on August 31, 2016. (ECF No. 64.) On September 29, 2016, Respondent filed a Response to Petitioner's Motion for Review. (ECF No. 66.)  On January 25, 2017, Senior Judge Loren E. Smith of the U.S. Court of Federal Claims filed an opinion denying Petitioner's Motion for Review. (ECF No. 69.)

On April 26, 2017, Petitioner filed a *final* application for attorneys' fees and costs, which superseded the previous *interim* fees application. (ECF No. 73.)

On May 1, 2017, Respondent filed a Response to Petitioner's final application. (ECF No. 74.)  In that response, Respondent takes the position that the Vaccine Act does not contemplate "any role for Respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs," (*id.*, p. 1), and requests that the special master "exercise his discretion" in determining a reasonable award (*id.*, p. 3).

## III
## DISCUSSION

### A.  Good faith and reasonable basis

Respondent's Response to Petitioner's application states that "Respondent is satisfied that the statutory requirements for an award of attorneys' fees and costs are met in this case." (ECF No. 74, p. 2)  Thus, Respondent acknowledges that Petitioner prosecuted this case in "good faith" and with a "reasonable basis," as required by the Vaccine Act. See 42 U.S.C. §300aa-15(e)(1). (ECF No. 62, p. 2.)   I agree.

### B.  Hourly rates

The "Invoice" of professional services, provided by the law firm Shoemaker, Gentry, & Knickelbein, indicates that all three of these lawyers participated in preparing this case, as well as two paralegal staff members. (ECF No. 73, pp. 8-27.)  The hourly rates sought by the attorneys over the course of this litigation are as follows:

|  | in 2013 | in 2014 | in 2015 | in 2016 | in 2017 |
|---|---|---|---|---|---|
| Clifford Shoemaker | $385/hr. | 400 | 415 | 430 | **446** |
| Renee Gentry | $361/hr. | 375 | 400 | 415 | **430** |
| Sabrina Knickelbein | $325/hr. | 337 | 350 | 365 | 378 |

(*Id.*)(with two items emphasized in bold). The requested rates for 2013 to 2016 are within the ranges set forth in *McCulloch v. HHS*, No. 09-293V, 2015 WL 5634323, at *18 (Fed. Cl. Spec. Mstr. Sept. 1, 2015), and the Office of Special Masters ("OSM") suggested fee schedules.[2] These attorneys' rates have also been found previously to be reasonable and have been awarded. (*See, e.g., Bookey v. HHS*, No. 13-026V, 2017 WL 2544892, *2 (Fed. Cl. Spec. Mstr. May 18, 2017); *Mikkelson v. HHS*, N0. 15-867V, 2016 WL 6803786, *3 (Fed. Cl. Spec. Mstr. Oct. 3, 2016).) I find that the requested rates for these attorneys in 2013-2016 are reasonable and should be awarded in this case.

The rate billed by Ms. Knickelbein in 2017 ($378/hour) is also consistent with *McCulloch* and the OSM fee schedule. However, the hourly rate billed in 2017 by Mr. Shoemaker ($446/hour) exceeds the range set forth in the OSM fees schedule, as does the rate billed by Ms. Gentry ($430/hour).  According to that schedule, a highly experienced attorney such as Mr. Shoemaker, who has been practicing law for over 40 years, may reasonably be awarded $394 - $440/hour.  Within this range, I will award Mr. Shoemaker $440 per hour. Likewise, Ms. Gentry has been practicing law for more than 20 years, and belongs at the upper limit of the range provided in the OSM fees schedule (that is, $358 to $424, in 2017).  Therefore, I will allow $424 per hour for the hours billed by Ms. Gentry in 2017.

### C.  Hours expended

Petitioner submitted an appropriate billing record listing the dates of service, the amounts of time expended by each attorney, with descriptions of each task performed.  (*See* ECF. No. 73, pp. 8-27.)  This record duplicates the information provided for 2013 – 2016 in Petitioner's *interim* fees application (ECF No. 60), with additional hours billed for work performed in 2017.

Respondent offers no specific objections or comments regarding Petitioner's current request for *final* attorneys' fees and costs.  (*See* ECF No. 74.)  However, after reviewing Petitioner's previous *interim* fees application, Respondent opined that "[b]ased on a survey of fee awards in similar cases and her experience litigating Vaccine Act claims, respondent asserts that a reasonable amount for fees and costs in the present case would fall between $80,000 and $90,000."  (ECF No. 62, pp. 3-4.)  Respondent cited two similar cases wherein petitioners received awards for attorneys' fees and costs within that range.[3]

---

[2] See United States Court of Federal Claims – Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedules, available at http://www.uscfc.uscourts.gov/node/2914 (last accessed August 23, 2017).
[3] *See Dudash v. HHS*, No. 09-646V, 2011 WL 1598836, at *6 (Fed. Cl. Spec. Mstr. Apr. 7, 2011) (awarding $81,809.02 in attorneys' fees and costs following a one-day, two-expert hearing and post-hearing briefing); *Carrino v. HHS*, No. 08-0266V, 2013 WL 828796, at *1 (Fed. Cl. Spec. Mstr. Jan. 17, 2013) (awarding $90,492.67 in interim attorneys' fees and costs and $1,125.84 for petitioner's recoverable out-of-pocket costs following an entitlement hearing).

In general, I agree that the cases cited by Respondent are comparable to the circumstances in this case, with one reservation.  That is, it appears that Respondent's "survey" of similar cases (*see* ECF No. 62, filed Aug. 4, 2016) necessarily reviewed fees decisions from 2015 and earlier.  In fact, the decisions that Respondent cited were filed in 2011 and 2013.  Clearly, reasonable attorneys' fees and costs for litigation pursuant to the Vaccine Act have increased significantly since the decisions in the cases cited.

Petitioner's final application for attorneys' fees and costs, filed on April 26, 2017, requested $83,486 in fees, and $25,754 for costs, for a total of $109,240. (ECF No. 73.)  This total requested amount is somewhat greater than Respondent's proposed range (from $80,000 to $90,000).   However, I have carefully reviewed the attorneys' hours recorded in Petitioner's Invoice (ECF No. 73, pp. 8-27), and I find that the numbers of hours expended by counsel are reasonable, under the circumstances of this case.  The minimal number of hours billed for paralegal work, and the requested hourly rates are also reasonable.

### D.  Costs

Petitioner's billing record provides details concerning $695 requested for Petitioner's personal expenses, and $25,754 requested for the attorneys' expenses, which were incurred during this litigation. (See ECF No. 73, pp. 3, 27-28.)  I find all of the costs requested to be reasonable.

#### 1.  Costs for Dr. Shafrir

As with fees, Respondent did not challenge any items of costs specifically.  Many of the costs are relatively routine, such as expenses related to obtaining medical records, mailings, photocopies, telephone calls, the hearing transcript, and travel.  All of these costs are reasonable and properly documented, and are awarded in full.

The largest part of Petitioner's costs, however, concerns time expended by Dr. Yuval Shafrir, in preparing his expert report and explaining it during the hearing.  Dr. Shafrir seeks a total of $18,054 in fees and costs. (*See* ECF. No, 73, p. 29.) He billed 4 hours at $500 per hour for time he spent testifying during the hearing, and 45.5 hours at $350 per hour for all of the other time he spent formulating his expert opinion.  (*See* ECF No. 73, pp. 31-32.) He also billed for $129 of miscellaneous travel expenses.  I find that both the number of hours billed and the related costs are reasonable.

Dr. Shafrir's proposed rate of $350/hour for work performed from May 2014 through September 2015 is reasonable, as is the $500/hour rate billed for his testimony during the hearing.  Both rates are consistent with rates that special masters have awarded for neurologists. *See Brown v. HHS*, No. 09–426V, 2012 WL 952268, at *10 (Fed. Cl. Spec. Mstr. Feb. 29, 2012) (awarding a neurologist $450-$500 per hour for work performed in 2009-2011).  Also, those rates have been awarded previously for Dr. Shafrir's work, in *Whitney v. HHS*, No. 10-809V, 2016 WL 4491499, at *6 (Fed. Cl. Spec. Mstr. July 27, 2016).

### 2. *Petitioner's own litigation costs*

Petitioner's costs of $695 are expenses related to their travel to the hearing held on September 18, 2015. (ECF No. 73, p. 3.)  These costs are reasonable and they should be awarded in full.

## IV
## AMOUNT OF THE AWARD

### A. *Summary of fees awarded*

The hours expended by Petitioner's counsel, and the rates used to bill those hours from 2013 to 2016, are both reasonable and will be awarded.

In 2017, the hours expended by counsel are reasonable, but the rates used to bill those hours for Mr. Shoemaker and Ms. Gentry were excessive.  Accordingly, the part of the award that pertains to 2017 will be reduced by a total of $43.  The result is as follows:

Total fees requested $83,486 - $43 = $83,443 total fees awarded.

### B. *Summary of costs awarded*

I see no reason to reduce Petitioner's requested costs.  Petitioner shall receive $25,754 for attorneys' costs, and $695 for Petitioner's own expenses.

## V
## NOTATION CONCERNING "REASONABLE BASIS" IN AUTISM CASES IN GENERAL

As discussed in Section II of my Decision on entitlement to an award, filed in this case on August 1, 2016, in the early 2000s controversies arose concerning whether autism spectrum disorders might be caused or affected by vaccines (*See* ECF No. 61).  Thus, thousands of Vaccine Act claims were filed during those years alleging that ASDs were vaccine-caused.  These claims were certainly brought in good faith.  Further, in light of the scientific uncertainty at the time, I found that the *filing* of those petitions was reasonable.  It was also reasonable to keep such claims pending until the OAP "test cases" became final in 2010, and for some short period of time thereafter, in order for counsel for each petitioner to digest the complicated science, and to consult with experts to see if a reasonable basis to go forward could be found.

However, by the end of 2010, the two major theories concerning vaccine-causation of autism had been thoroughly considered and rejected in the OAP test cases, with opinions that, among other things, found that *all* of the many reputable epidemiological studies had found *no association* between any vaccines and autism.  At that point, the vast majority of the approximately 5,000 autism petitioners each elected either to withdraw their claim, or to request that the special master enter a decision denying their claim on the written record.  Only a small minority of the autism petitioners elected to continue to pursue their cases, seeking other causation theories and/or other expert witnesses.  Since 2010, a number of such cases have gone to trial before special masters, and in the cases of this type decided thus far, *all* have resulted in *rejection* of petitioners' claims that vaccines played a role in causing or aggravating their child's

autism or autistic symptoms.  *See* the cases cited in Section II of my Decision filed on August 1, 2016 (ECF No. 61).

There is now, therefore, a serious question concerning whether it is reasonable for additional Vaccine Act petitioners to continue to pursue highly speculative theories concerning vaccinees with autism spectrum disorders.  In each such case, of course, a case-specific decision must be made concerning if and when it became unreasonable, under all the circumstances of the case, to continue to go forward.  In many of the cases decided since 2010, petitioners have tried to avoid the conclusions of the test cases by alleging that a child suffered a vaccine-caused "encephalopathy" that resulted in "autistic-like features," or that a child had an underlying "mitochondrial disorder" that somehow made the child more vulnerable to injuries by vaccines, or that an "autoimmune" process was involved.  But all such cases, in essence, have amounted to attempts to prove that vaccines can cause or aggravate *symptoms of ASDs*.  And, except for the two highly unusual Table Injury cases described in a footnote of my Decision filed on August 1, 2016 (ECF No. 61, n.5), all such theories have been *rejected*.

Further, a review of the post-"test case" decisions enumerated in Section II of my Decision filed on August 1, 2016, demonstrates that those cases typically involved expert witnesses who were quite underqualified to opine on the vaccine-causation issues at hand, and/or presented theories with no substantial scientific merit, and/or disregarded the facts contained in the medical records of the case.

Accordingly, I hereby put counsel, *especially in autism-related cases*, on notice, once again, that if counsel continue to go forward with such extremely weak cases, I (and other special masters) am *not* likely to find that there was a reasonable basis for the filing or for the continued prosecution of these cases.  (*See also Wilson v. HHS*, No. 15-551V, 2017 WL 877278, fn. 14 (Fed. Cl. Spec. Mstr. Feb. 10, 2017).

# VI
# CONCLUSION

I hereby award the following attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(b) and (e)(1):

- a lump sum of $109,197.00, in the form of a check payable jointly to Petitioner and Petitioner's counsel, Clifford Shoemaker, on account of services performed by counsel's law firm.

- a lump sum of $695.00, in the form of a check payable to Petitioner, which represents Petitioner's own litigation expenses in this case.

In the absence of a timely-filed motion for review filed pursuant to Appendix B of the Rules of the U.S. Court of Federal Claims, the clerk of the court shall enter judgment in accordance herewith.

**IT IS SO ORDERED.**

/s/ George L. Hastings, Jr.
George L. Hastings, Jr.
Special Master